UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
CASE NUMBER: 5:08cv127-KKC

Rick & Deborah Davenport,            Plaintiffs,
106 Ilhardt Ave.
Nicholasville, Kentucky 40356

Eastern District of Kentucky
**FILED**

MAR 10 2008

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

Vs

GLA Company, INC.                    Defendant,
2630 Gleeson Lane
Louisville, Kentucky 40299,

**COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, THE FAIR DEBT COLLECTION PRACTICES ACT, KENTUCKY CONSUMER PROTECTION ACT, DEFAMATION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, and INJUNCTIVE RELIEF**

COMES NOW, the PLAINTIFFS, Rick Davenport (hereafter "Plaintiff #1"), & Deborah Davenport (hereafter "Plaintiff #2"),, pro se, respectfully requests this Court to issue Declaratory Judgment, Preliminary and Permanent Injunctive Relief and Damages. In support thereof, Plaintiffs show unto the Court as follows:

This is a civil action whereby Plaintiffs seek Preliminary and Permanent Injunctive Relief enjoining Defendant, GLA Company, Inc., (hereafter "CA"), and other conspirators, agents, servants and employees and those acting in active concert and with actual notice thereof, from engaging in further violations of the Fair Credit Reporting Act (15 U.S.C. § 1681 et. seq. (hereafter "FCRA")) and the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et. seq. (hereafter "FDCPA")), Kentucky Consumer Protection Act (KRS 367.170 and KRS 367.175 et. seq. (hereafter "KCPA")). An actual controversy exists between the parties, in that the challenged actions of the DEFENDANT has caused and will continue to cause the PLAINTIFFS substantial harm unless the requested relief is granted.

JURISDICTION AND VENUE

1. Jurisdiction of this court arises under 15 U.S.C. § 1681p and 1692k (d) and 28 U.S.C. § 1331. Declaratory relief is available pursuant to 28 U.S.C. § 2201.

2. Venue is proper, because many of the relevant events occurred within Fayette and Jessamine Counties in the State of Kentucky, which are located within this District.

3. Plaintiffs' Federal and State claims against the Defendant derive from a common focus of operative fact and are of such character that the Plaintiffs would ordinarily be expected to try them in one judicial proceeding.

4. This is an action brought by a consumer for violations of the above named Acts in connection with thirteen purported debts appearing on Plaintiffs' consumer reports, the defendants' collection tactics in attempting to collect it, and the defendants' intentional misrepresentation of and malicious reporting of inaccuracies regarding it, despite numerous written correspondence providing information that would facilitate a reasonable resolution of the matter. Thus, the plaintiffs seek damages and, to the extent possible, injunctive and declaratory relief.

PARTIES

5. The Plaintiffs are both natural persons residing within Jessamine County, in Kentucky.

6. GLA Company, Inc. is a business that uses instruments of interstate commerce to facilitate the collecting of debts owed or asserted to be due another.

7. All Defendants are considered a "person", under Kentucky statutes.

FACTS

8. The thirteen accounts referenced in this complaint are: 3040360002545141 (Hereafter Account #1), 5060260002545140 (Hereafter Account #2), 6010160001969637 (Hereafter Account #3), 11050160001879726 (Hereafter Account #4), 2170160001697489 (Hereafter Account #5), 12050060001538032 (Hereafter Account #6), 4240660004568432 (Hereafter Account #7), 2240560003725226 (Hereafter Account #8), 11130260002596515 (Hereafter Account #9), 3080260002091953 (Hereafter Account #10), 12030160002006938 (Hereafter Account #11), 12120260002573620 (Hereafter Account #12), and 12130660004964877 (Hereafter Account #13).

9. On or about March 15, 2007, an employee of GLA Company, INC. named Paul Allen, called Plaintiff #2 at her work. He stated to her that she owed approximately $800 in medical bills and that she needed to make arrangements to pay these. Plaintiff #2 told Mr. Allen that she could not discuss personal matters at her work and he was not to contact her at work again. Plaintiff #2 further informed Mr. Allen that he would need to contact Plaintiff #1 at home. Plaintiff #2 then hung up the phone.

10. Plaintiff #2 called Plaintiff #1 and informed him of the contact.

11. On or about March 15, 2007 Plaintiff #1 called GLA Company, Inc. and spoke to Paul Allen. Plaintiff #1 told Paul Allen that Plaintiff #2 could not conduct personal business at work and had asked him to contact GLA to get the totals and make what arrangements were necessary. Mr. Allen then provided the information on Plaintiff #2's accounts to Plaintiff #1. Plaintiff #1 then asked Mr. Allen if he had any accounts. Plaintiff #1 supplied his information to Mr. Allen and was informed that he had two (2) open accounts. As Plaintiff #1 was driving at the time he then asked what the total was owed by the Plaintiffs'. Mr. Allen asked Plaintiff #1 to wait while he linked the accounts and then provided that answer.

12. Plaintiffs were denied a home loan on March 23, 2007.

13. Plaintiffs were denied a home loan on April 9. 2007.

14. Plaintiffs were denied an auto loan on June 6. 2007.

15. Plaintiffs were denied a home loan on August 23, 2007.

16. On or about August 23, 2007, Plaintiff #1 spoke to a Mortgage Loan officer about the Plaintiffs' credit reports and was told that there seemed to be a lot of duplicate tradelines.

17. On August 28, 2007 Plaintiffs requested and received their credit reports.

18. Plaintiffs reviewed the reports and discovered that all individual accounts reported by GLA were copied to the other's credit report. (See Exhibit A)

19. On August 31, 2007, in an effort to settle the accounts, the Plaintiffs sent GLA a settlement offer and notice that the accounts were disputed. (See Exhibit B)

20. September 1-5, 2007, Plaintiffs sent several settlement offers/dispute notices to Defendant. No settlement was reached.

21. September 4, 2007 Defendant sent debt validation information in response to the Plaintiffs' statement of dispute. (See Exhibit C)

22. On September 4, 2007, Plaintiff #1 signed up for Credit Monitoring.

23. On September 7, 2007, Plaintiff #2 signed up for Credit Monitoring.

24. September 11, 2007, Accounts #1-12 had not been identified as disputed on Plaintiff #1's Credit Report.

25. September 11, 2007, Accounts #1-2, #7-13 had not been identified as disputed on Plaintiff #2's Credit Report.

26. On or About September 12, 2007 Plaintiff #1 disputed Accounts #3-10 with TransUnion Consumer Reporting Agency.

27. On or About September 12, 2007 Plaintiff #1 disputed Accounts #3-6 with Experian Consumer Reporting Agency.

28. On or About September 14, 2007 Plaintiff #2 disputed Accounts #1 and #2 with TransUnion Consumer Reporting Agency.

29. On or About September 17. 2007 Defendant received Plaintiff #1's disputes from TransUnion and Experian.

30. On September 19, 2007 Defendant copied Account #13 from Plaintiff #2's Credit Report and posted it on Plaintiff #1's Credit Report. Stated that Plaintiff #1 was Co-signer on Account.

31. On or about September 19, 2007 Defendant received Plaintiff #2's dispute from TransUnion.

32. September 26, 2007, Plaintiff #1 receives dispute response back for Experian.

33. Account #4 is deleted from Experian Credit Report. Accounts #3, #5 and #6 are verified.

34. Defendant fails to mark the disputed accounts as disputed.

35. Defendant sends letter dated October 3, 2007 to Plaintiff #2's work place, addressed to her, C/O her employer. (Exhibit D) Plaintiff #2 has numerous contacts with Defendant as a part of her work. Defendant is fully aware of whom she works for and the nature of business Plaintiff #2 is in.

36. October 11, 2007, Plaintiff #2 receives dispute response back for TransUnion.

37. Account 1 is deleted from TransUnion Credit Report. Account 2 is verified. Account 1 is not removed from Experian or Equifax Credit Reports. (See Exhibit E)

38. Defendant fails to mark the disputed accounts as disputed.

39. October 12, 2007, Plaintiff #1 receives dispute response back from TransUnion.

40. Account #4, #5, #6 and #8 is deleted from TransUnion Credit Report. Accounts #7, #9 and #10 are verified. Accounts remain on Experian and Equifax.

41. Defendant fails to mark the disputed accounts as disputed.

42. On October 19, 2007, Defendant updates accounts #1-2, and #7-13 on both Plaintiffs' Experian credit reports.

43. Defendant fails to mark the disputed accounts as disputed.

44. On or about November 1, 2007, Plaintiff #1 disputes account #3.

45. On or about November 6, 2007 Defendant receives Plaintiff's dispute from TransUnion.

46. December 1, 2007, Plaintiff #1 receives dispute response back from TransUnion.

47. Account #3 is deleted from TransUnion Credit Report.

48. February 12, 2008 Plaintiff #1 disputes Accounts #7 and #10-13 with TransUnion and Experian.

49. February 12, 2008 Plaintiff #2 disputes Accounts #1-2 with TransUnion and Experian.

50. On or About February 13. 2007 Defendant received Plaintiffs' disputes from TransUnion and Experian.

51. On March 5, 2008 Plaintiff #1 receives dispute response back from Experian. All accounts are verified.

52. On March 5, 2008 Plaintiff #2 receives dispute response back from Experian. Accounts #1 and #2 are deleted.

53. Defendant fails to mark the disputed accounts as disputed.

54. On March 8, 2008 Plaintiff #1 receives dispute response back from TransUnion. All accounts are verified. (Exhibit F)

55. On March 8, 2008 Plaintiff #2 receives dispute response back from TransUnion. Account #2 is verified. (Exhibit F)

56. Defendant fails to mark the disputed accounts as disputed. (Exhibit G & H)

## COUNT 1- VIOLATIONS OF THE
## FAIR CREDIT REPORTING ACT

57. The allegations of paragraphs 1 through 56 of this Complaint are realleged and incorporated by reference.
58. GLA Company, INC., regularly and in the course of business, furnishes information to one or more consumer reporting agencies about their transactions or experiences with any consumer.
59. The Fair Credit Reporting Act (15 U.S.C. § 1681 et. seq.) provides guidelines for the furnishers of information to consumer reporting agencies.
60. Defendant's failure to properly investigate the reporting of Account #2 when disputed by Plaintiff #2 is a direct violation of FCRA §623. Defendant's own documents provide conclusive proof of the inaccurate reporting.

> § 623. Responsibilities of furnishers of information to consumer reporting agencies [15 U.S.C. § 1681s-2]
>
> (b) Duties of furnishers of information upon notice of dispute.
>
>> (1) In general. After receiving notice pursuant to section 611(a)(2) [§ 1681i] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall
>>
>>> (A) conduct an investigation with respect to the disputed information;
>>>
>>> (B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [§ 1681i];
>>>
>>> (C) report the results of the investigation to the consumer reporting agency;
>>>
>>> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>>>
>>> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

      (i) modify that item of information;

      (ii) delete that item of information; or

      (iii) permanently block the reporting of that item of information

61. The Defendant's willful, wanton, intentional, and malicious reporting and lack of adequate investigation, as documented, clearly shows willful noncompliance with the FCRA.

## COUNT 2- VIOLATIONS OF THE
## FAIR CREDIT REPORTING ACT

62. The allegations of paragraphs 1 through 56 of this Complaint are realleged and incorporated by reference.

63. Defendant's failure to properly investigate the reporting of Account #7-13 when disputed by Plaintiff #1 is a direct violation of FCRA §623. Defendant's own documents provide conclusive proof of the inaccurate reporting.

  § 623. Responsibilities of furnishers of information to consumer reporting agencies [15 U.S.C. § 1681s-2]

    (b) Duties of furnishers of information upon notice of dispute.

      (1) In general. After receiving notice pursuant to section 611(a)(2) [§ 1681i] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall

        (A) conduct an investigation with respect to the disputed information;

        (B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [§ 1681i];

        (C) report the results of the investigation to the consumer reporting agency;

        (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

        (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

          (i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information

64. The Defendant's willful, wanton, intentional, and malicious reporting and lack of adequate investigation, as documented, when taken in conjunction with Count 1, clearly shows willful noncompliance with the FCRA.

### COUNT 3- VIOLATION OF THE FAIR
### DEBT COLLECTION PRACTICES ACT

65. The allegations of paragraphs 1 through 56 of this Complaint are realleged and incorporated by reference.
66. The Fair Debt Collection Practices Act (15 U.S.C. § 1692 et. seq.) provides safeguards against abuse of consumers by debt collectors in their quest to collect debts. As such, the FDCPA provides little or no leeway for defending the abusive tactics of debt collectors.
67. The defendant, GLA Company, Inc., is a debt collector, as defined by 15 U.S.C. § 1692a (6).
68. Defendant communicated with Plaintiff #2 at her place of employment, after the Defendant was informed Plaintiff #2 could not conduct personal business while at work. This is a direct violation of FDCPA § 805.

> § 805. Communication in connection with debt collection   [15 USC 1692c]
>
> (a) COMMUNICATION WITH THE CONSUMER GENERALLY. Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt -
>
> > 3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.

### COUNT 4- VIOLATION OF THE FAIR
### DEBT COLLECTION PRACTICES ACT

69. The allegations of paragraphs 1 through 56 of this Complaint are realleged and incorporated by reference.
70. The Fair Debt Collection Practices Act (15 U.S.C. § 1692 et. seq.) provides safeguards against abuse of consumers by debt collectors in their quest to collect debts. As such, the FDCPA provides little or no leeway for defending the abusive tactics of debt collectors.
71. The defendant, GLA Company, Inc., is a debt collector, as defined by 15 U.S.C. § 1692a (6).
72. Defendant communicated with Plaintiff #2 at her place of employment, by sending her a letter. Defendant is fully aware of whom Plaintiff #2 works for and the nature of business Plaintiff #2 is in. With this information, the Defendant would have known that any letter sent, would be opened and read by numerous individuals prior to delivery to Plaintiff #2. This is a direct violation of FDCPA § 805.

§ 805. Communication in connection with debt collection   [15 USC 1692c]

(b) COMMUNICATION WITH THIRD PARTIES. Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

## COUNT 5- VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

73. The allegations of paragraphs 1 through 56 of this Complaint are realleged and incorporated by reference.
74. The Fair Debt Collection Practices Act (15 U.S.C. § 1692 et. seq.) provides safeguards against abuse of consumers by debt collectors in their quest to collect debts. As such, the FDCPA provides little or no leeway for defending the abusive tactics of debt collectors.
75. The defendant, GLA Company, Inc., is a debt collector, as defined by 15 U.S.C. § 1692a (6).
76. Defendant communicated information that they knew was false, or should have known was false. The Defendant reported Accounts #1 and #2 as belonging to Plaintiff #2. This is a direct violation of FDCPA § 807.

§ 807. False or misleading representations.  [15 USC 1962e]

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

## COUNT 6- VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

77. The allegations of paragraphs 1 through 56 of this Complaint are realleged and incorporated by reference.
78. The Fair Debt Collection Practices Act (15 U.S.C. § 1692 et. seq.) provides safeguards against abuse of consumers by debt collectors in their quest to collect debts. As such, the FDCPA provides little or no leeway for defending the abusive tactics of debt collectors.
79. The defendant, GLA Company, Inc., is a debt collector, as defined by 15 U.S.C. § 1692a (6).
80. Defendant communicated information that they knew was false, or should have

known was false. The Defendant reported Accounts #7-13 as belonging to Plaintiff #1. This is a direct violation of FDCPA § 807.

> § 807. False or misleading representations. [15 USC 1962e]
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>> 8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

## COUNT 7- VIOLATION OF THE FAIR
## DEBT COLLECTION PRACTICES ACT

81. The allegations of paragraphs 1 through 56 and 66 of this Complaint are realleged and incorporated by reference.
82. The defendant, GLA Company, INC., is a debt collector, as defined by 15 U.S.C. § 1692a (6).
83. Defendant communicated credit information about Plaintiff #2 that was disputed and did not identify such information as disputed. This is a direct violation of FDCPA § 807.

> § 807. False or misleading representations. [15 USC 1962e]
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
>> 8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

## COUNT 8- VIOLATION OF THE FAIR
## DEBT COLLECTION PRACTICES ACT

84. The allegations of paragraphs 1 through 56 and 66 of this Complaint are realleged and incorporated by reference.
85. The defendant, GLA Company, INC., is a debt collector, as defined by 15 U.S.C. § 1692a (6).
86. Defendant communicated credit information about Plaintiff #1 that was disputed and did not identify such information as disputed. This is a direct violation of FDCPA § 807.

> § 807. False or misleading representations. [15 USC 1962e]
>
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed

## COUNT 9- VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT

87. The allegations of paragraphs 1 through 56 of this Complaint are realleged and incorporated by reference.

88. The Kentucky Consumer Protection Act's legislative intent is "The General Assembly finds that the public health, welfare and interest require a strong and effective consumer protection program to protect the public interest and the well-being of both the consumer public and the ethical sellers of goods and services."

89. The Defendants false reporting of multiple accounts that do not belong to Plaintiff #2 and committing numerous violations of two (2) Federal laws are unlawful acts as identified by KCPA. The previously listed actions are a violation of Kentucky Revised Statute 367.170.

> Kentucky Revised Statute 367.170
>
> Unfair, unconscionable, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

## COUNT 10- VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT

90. The allegations of paragraphs 1 through 56 of this Complaint are realleged and incorporated by reference.

91. The Kentucky Consumer Protection Act's legislative intent is "The General Assembly finds that the public health, welfare and interest require a strong and effective consumer protection program to protect the public interest and the well-being of both the consumer public and the ethical sellers of goods and services."

92. The Defendants false reporting of multiple accounts that do not belong to Plaintiff #1 and committing numerous violations of two (2) Federal laws are unlawful acts as identified by KCPA. The previously listed actions are a violation of Kentucky Revised Statute 367.170.

**CONCLUSIONS AND REQUESTED RELIEF**

93. The Plaintiffs, because of the Defendant's blatant disregard for the Plaintiffs' rights as allowed by the FCRA and the FDCPA, has been or would have been denied credit and has suffered additional damage to the Plaintiff's future financial health. In addition, Plaintiffs have had a significant amount of stress, humiliation, embarrassment and undue mental anguish placed upon them by the Defendant as a result of Defendant's willful, wanton, intentional, and malicious behaviors in attempting to collect from the Plaintiff.

94. The actions on the part of the Defendant demonstrate not only a willful disregard for Federal and State Law, but constitute a blatant attempt to injure or ruin the Plaintiff's credit rating, thus the future financial health of the Plaintiffs and Plaintiff's family. Defendant has demonstrated an inability or unwillingness to operate its business in accordance with Federal and State Laws, and instead resorts to illegal tactics to collect from the Plaintiff.

95. Defendant's liability for willful noncompliance of the FCRA is actual damages and a maximum liability of $1,000 per violation, plus punitive damages, and reasonable costs and attorney fees. This is provided for by FCRA §616 (Civil Liability [15 U.S.C. § 1681n]).

96. Defendant's maximum liability for violations of the FDCPA is $1,000 per action per Plaintiff, plus actual damages, reasonable costs and attorney fees, as provided for by FDCPA §813 (Civil Liability [15 U.S.C. § 1692k]).

WHEREFORE, the Plaintiff respectfully requests relief as follows:

97. For preliminary and permanent injunctive relief, enjoining the named Defendant from engaging in further violations of the Fair Credit Reporting Act, The Fair Debt Collection Practices Act, and the Kentucky Consumer Protection Act.

98. For preliminary and permanent injunctive relief, enjoining the named Defendant from: Selling, returning, transferring, reporting, or otherwise assigning the above named accounts to any other collection agency, company, debt collector, reseller or Credit Reporting Agency.

99. For an order awarding statutory damages in the following amounts:

   1. For Count 1: Five (5) violations of the FRCA, in the amount of 1,000 per violation, plus reasonable costs and attorney fees.
   2. For Count 2: Three (3) violations of the FRCA, in the amount of 1,000 per violation, plus reasonable costs and attorney fees.
   3. For Count 3: One (1) violation of the FDCPA, in the amount of 1,000, plus reasonable costs and attorney fees.
   4. For Count 4: One (1) violations of the FDCPA, in the amount of 1,000, plus reasonable costs and attorney fees.
   5. For Count 5: Six (6) violations of the FDCPA, in the amount of 1,000, plus reasonable costs and attorney fees.
   6. For Count 6: Two (2) violations of the FDCPA, in the amount of 1,000, plus reasonable costs and attorney fees.
   7. For Count 7: Fourteen (14) violations of the FDCPA, in the amount of 1,000, plus reasonable costs and attorney fees.
   8. For Count 8: Thirty Eight (38) violations of the FDCPA, in the amount of 1,000, plus reasonable costs and attorney fees.
   9. For Count 9: Violation of the KCPA, damages to be determined by the Court.

10. For Count 10: Violation of the KCPA, damages to be determined by the Court.

11. Award actual damages, to include intentional infliction of emotional distress and defamation, in the amount of $15,075.

100. For an order awarding Compensatory damages in an amount to be determined by the Court.

101. For an order awarding Punitive damages per Kentucky Revised Statute 411.184 and 411.186, in an amount to be determined by the Court.

102. For an order awarding any other damages and relief the Court may find fair and just.

Respectively Submitted,

Plaintiff, Rick & Deborah Davenport
106 Ilhardt Avenue
Nicholasville, Kentucky 40356
Home: 859-887-9972
Daytime: 859-509-5948
Fax: 615-354-6691
Email: davenportrdb@alltel.net

By: _____
Rick Davenport, Pro Se Plaintiff

By: _____
Deborah Davenport, Pro Se Plaintiff

3/10/08
Date